Good morning, Your Honors. May it please the Court. I'm Justin Brown on behalf of James Flood, and what we're asking the Court to do is fairly simple. We're asking the Court to remand this case to the District Court to conduct an evidentiary hearing. I'd like to begin by explaining the ineffective assistance of counsel claim. It's at the center of this case. And then after doing that, I'd like to go into some of the factual disputes that pervade this case and that necessitate a hearing. So the claim presented by Flood in his 2255, dating back to 2011, was that trial counsel was ineffective for how it conducted or failed to conduct plea discussions in the pretrial phase. Obtaining a plea in this case should have been an obvious first step that any defense attorney would have taken, yet counsel completely abdicated their role as defense counsel when they failed to do this. What? I want to hear from you, but how can you say that? We know that defense counsel talked to the prosecution about a plea. You might say that's not enough, but you can't say completely abdicated, right? Because they talked to them and said, what about a plea? And they said it'd require a proffer first? Is there a dispute that that conversation took place? Well, the government denies that it took place. So to that extent, there is a dispute. But I think for purposes of today, we have to assume that it did take place. But that took place during jury selection. All I'm asking you is you said completely abdicated, right? And it just doesn't seem consistent, right? Totally fine to say didn't do enough, right? Wasn't sufficiently engaged, should have done it sooner, should have done it later. I don't know what you want to say. But I'm just, it's just hard when you start off by saying completely abdicated when that doesn't seem to match up with what the records show. Well, Your Honor, I am going to push back on that a little bit because that conversation took place technically during trial. So we're talking about the pre-trial phase. During jury selection. Correct. Correct. We're talking about the pre-trial phase where a singular objective of those lawyers should have been to find a way to plea this case out. And when there is a complete failure to do that, right? There wasn't a defense counsel did not approach the government a single time. They did nothing at all to try to obtain a plea. And this case was screaming out for a plea agreement. No, it wasn't screaming out for a plea agreement. There would be a natural reluctance when you looked at the conduct here, the kidnapping and resulting in death, which had a mandatory life sentence. There could be plenty of reasons that the government would have been entirely resistant to having the case plead out. And this seems to be plausible. This isn't the case that you would cut someone a break. I mean, what the allegations here are very, very serious. Your Honor, I agree. That only begins to state the problems because they didn't think that this individual, normally these pleas are extended in this kind of case for an offer of cooperation in some way, shape or form. But this person was not viewed as someone who would provide reliable or persuasive testimony before a jury. Um, in any case, because he would have been open to impeachment on the grounds that he was a congenital liar. And so the problem is you're not holding any cards. You don't. You don't have a plausibly trustworthy witness to offer as part of a cooperation deal. Well, Your Honor, if that if that were the case, and I asked this question rhetorically, why is it that it was the government? It was the prosecutor who approached Defense Council to initiate plea talks. So therefore, it's a logical inference from that the government must have had some interest in Mr. Flood as a cooperator. Well, there's a dispute over that as well. What is the dispute about that? What is the evidence that the government was willing? I mean, I know we're moving around a little bit, but what is the evidence that's in dispute that the government was willing to think about any plea that resulted in time less than life? Because if it's not less than life, the plea doesn't help. Right, right. So they they might have been willing to let him plead straight up. But that's you can't bring it. This claim here that they would have thought about a plea less than life for someone out of these circumstances. And for Mr. Flood in particular, that didn't involve cooperation. And Your Honor, I may be splitting hairs a little bit here. But in Mr. Lawler's affidavit, he talks about proffering. And then the government's version is similar but a little bit different when they talk about full blown cooperation, a cooperation agreement. You've done enough of this to know that the first step to cooperate is to proffer, right? Like that. That is not that is not like, oh, those are totally different things. We can't possibly like think about those the same way. We've both done this enough to know you don't have cooperation without a proffer first because we have to evaluate whether the person's being honest and truthful. That's correct, Your Honor. You don't have cooperation without a proffer first. But there are times when there's a proffer, a truthful proffer, but no cooperation. And again, I don't want to get bogged down on this because it's splitting hairs to some degree. But the fact is, it was the government that reached out to Defense Counsel. Not only did they not engage, I mean, they clearly rebuffed any efforts that were made by Ms. Wilkinson to initiate plea discussions, but they didn't even convey that to their client and they didn't even bring him into the process. And this is a big element of hindsight into this. You know, the individual was convicted and he sits there in prison and he says, well, this should have been pled. I should have pled and everything. It's hard for me to see that the criminal justice system misfired in this situation. They had a jury trial. It was an 11-day trial. He was convicted of kidnapping, resulted in death, and obviously this was an outcome that was not pleasing to the individual involved. So what so often happens is people sit in jail and they think about it a little bit and then they say, well, doggone it, this thing, I should have pled. And that's just a situation of buyer's remorse. And we find that all the time in these plea cases that people having second thoughts because they dislike the particular adverse outcome. And they say, oh, we've done that. I could have gotten a better deal if I'd gone a different route. And so we blame it on the lawyer. But I don't see that here. I wonder what the standard of review is here. This is a question of . . . It's an abuse of discretion standard for denying the evidentiary hearing. But to address your point, I would suggest that this is just the opposite of what you have described because this is an extraordinary happening here where there's a case as serious as this and where there are no plea discussions at all. I mean, we all know . . . Well, that's not extraordinary at all. I mean, I know it's outside the record, but some of us here have handled a bunch of cases that involve mandatory life sentences and that were warranted. And there were never plea negotiations in those cases because those are the worst of the worst. They get the sentence that they're entitled to. I guess I'm not sure I . . . I don't see what's extraordinary. It's extraordinary that your client was involved in this offense. I agree with that. But once we're there, that doesn't seem that extraordinary to me at all. I'd like to make two points on that. The first is that that was addressed by the petitioner through an affidavit from William Purpura, a very experienced criminal defense attorney who essentially said, yes, it is fundamental to the role of defense counsel that they must try to plea out a case like this and that a plea could be . . . Oh, I'm sure that the defense counsel won't sit to plea. But what you're saying is it's extraordinary that there's no plea offered, that there are no plea negotiations. That's not extraordinary. Well, from the record, the record and the thing that we have on . . . No, no, but what he says is that that's what you should do. That's not whether it happens, right? He doesn't . . . he's not making an empirical claim. I don't understand his affidavit to be an empirical one. Well, there's also statistical support, which is cited in the brief. Something like 95% of all federal cases are pled out. And what proportion of those involve situations that involve death-eligible offenses? Well, let me address that for a little bit because there is a very big distinction here between Mr. Lighty, the co-defendant against whom the government sought the death penalty, and Mr. Flood. Mr. Flood was not the shooter, right? He didn't drive the vehicle. He wasn't even physically present when the murder occurred. And perhaps most significantly, this was not his beef. He's not the one who . . . Does that make it better or worse that it's not his beef? In terms of culpability, it makes him far less culpable. He's not the one who instigated this. He's not the one who pulled the trigger. And those are the co-defendants. And again, we're all experienced with these cases, and Your Honor certainly is, and I certainly am. But you're not holding any cards. You're not holding the cards. You've got an individual who lied in grand jury testimony and lied during the investigation and is going to be impeached if he ever goes into . . . if he was a witness for the state during the trial. He was going to be blown out of the water. So you say, well, what do you have to offer the prosecution? The only thing you have to offer the prosecution is to get out of a trial. But why would the prosecution want to get out of a trial in a case that involved the kind of heinous offenses that this one did? I just don't see what you . . . normally to bargain, you have to have something that each side can offer the other. And you've got, unfortunately, a person whose reputation for truth is, to put it gently, blemished. And you just . . . you can't bargain and the only thing that you have to offer the prosecution in this way is, oh, we can get you out of the effort of having a full trial. We can spare you the effort. But that's all you have to offer, and there's no indication that the prosecution would take that as a reason to the seriousness of the offense that was involved here and given what ultimately the jury found. It probably makes sense that they should have found that there was . . . that this individual after an 11-day trial was guilty of kidnapping resulting in death. Your Honor, it's . . . He's not holding cards. Well, that's a great question, right? Your question is, what cards are they holding? And that is precisely the type of question that we would like to ask the prosecutor, defense counsel, at an evidentiary hearing. If there's no cards being held, why did the government, why did the prosecutor during jury selection reach out to defense counsel and say, hey, what's going on here? So you agree . . . I want to make sure I'm very clear. You agree that you could not win this IAC claim without showing that the government actually would have made a plea offer. You agree with that, right? Sorry, a reasonable probability. Reasonable probability. I was shorthanding. I'm sorry. But that's to win the IAC claim. But your argument is that we need an evidentiary hearing. So maybe you'll lose at an evidentiary hearing, right? Maybe the judge decides that everything is not true. But just so I understand, the argument is only about an evidentiary hearing? That's absolutely it. And I think you're absolutely right about the reasonable probability. That standard, as defined by Strickland, is less than a preponderance of the evidence. That's all we need. And that's all we need to win this case, much less to get to the evidentiary hearing. Thank you. Thank you. Ms. Munoz, pleased to hear from you. May it please the Court, MJ Kirsch Munoz for the United States. In his opening brief, Mr. Flood purports to identify one and only one dispute of fact that, in his view, deserves an evidentiary hearing. And that is whether the government would have offered a plea deal to Mr. Flood. But in fact, there is no dispute on that question. Because everyone agrees, Mr. Lawler agrees, Ms. Wilkinson agrees, the AUSA below, that the government would not have done so without, at a minimum, first obtaining a proffer from Mr. Flood. Ms. Munoz, can I take you back to what is honestly my single biggest concern in this entire case, other than, you know, the facts of the case? So this is JA 249, page 21. The district court wrote a sentence that I literally stopped reading and, like, had to clear my head. It is settled that evidentiary hearings on 2255 petitions are the exception and not the norm, and there is a heavy burden on the petitioner to emphasize that an evidentiary hearing is warranted. And then we cite an out-of-district district court opinion for that rather striking proposition, because that is literally the opposite of what the statute says. Do you disagree with that? I do not disagree with that. I miss your... So where did that crazy idea come from? I am not quite sure, Your Honor. I do not disagree that that is... Not the legal standard? That's not what the statute says? That is not what Mayhew says? That is not what... And with all due respect to the Eastern District of Virginia, that is not the law in the Fourth Circuit? Yes, that is... I would agree with you on all of that. Okay, so let's talk about what the standard for granting an evidentiary hearing is. According to the statute, what it says is if the files and records in the case conclusively show the petition... Sorry, unless the motion and files and records in this case conclusively show the prisoner is entitled to no relief, the court shall have a hearing. That's the legal standard, right? That is correct. And to the extent that there was any doubt about what those words meant, you know our decision in Mayhew, right? Yes, I do. And you know what our decision in Mayhew says about when you have to have a hearing? Yes. And what our decision in Mayhew says is, quote, this is page 176 to 177, a hearing is required when a movant, a colorable Sixth Amendment claim showing disputed facts beyond the record whose credibility determination or credibility determination, that's the legal standard for granting a hearing, right? Yes. How did the district court not egregiously fail to file that legal standard? I... That is not the standard that I read that when I read this opinion, I am not seeing a district court applying that legal standard. I agree that the district court stated the wrong legal standard, but I think regardless, this court should affirm the denial of 2255 relief because there is no dispute of fact of relevant fact on the question of whether Mr. Flood would have received a plea offer from the government. Evidentiary hearings are, of course, meant to resolve... Judge Heiden's case, because I found this to be interesting too, what is the standard? And he goes to Mayhew, as often the case, I sort of find great guidance from Judge Motz in her earlier decision in White, where she sort of seems to lay out like a slight... This is obviously an earlier case, but that's not sort of the interesting part about it. It actually points us to the Supreme Court case that addresses this. But she seems to suggest that there are two things that happen. There's a motion to dismiss. That's the summary dismissal before response. And then there's just like ordinary summary judgment, which is like before a hearing. And the court does that relying on the Supreme Court's decision in Blackledge, which sort of seems to tell us that. Is that the way that you think about it? Like at step one, there's a motion to dismiss standard that sort of applies, like they haven't alleged anything that even warrants a response. And then at the next step, what Blackledge talks about to determine whether a hearing is necessary, the Supreme Court sort of explains and Judge Motz sort of re-articulates in 2004 that we're applying effectively a summary judgment standard to determine whether a hearing is warranted. Yes, I think that is how I would approach it as well, Your Honor. I think the evidentiary hearings are meant to allow the petitioner to prove the facts that he has alleged in his petition. But here, the government's position is that he hasn't alleged facts. Okay, so JA 92, paragraph two, all I wanted to do was avoid getting a life sentence. Why doesn't that suggest he at least plausibly alleged that maybe he would have been willing to do anything, including proffer to avoid a life sentence? I think there's nothing in the record to suggest that the government, even if he, you know, even if Mr. Flood said he would have proffered, put in evidence that he would have proffered truthfully, would have cooperated, would have done whatever is necessary to get a plea. There is, in fact, nothing to suggest that the government would have offered a plea. Except the sense that they literally approached him during jury selection, say, hey, do you want to talk about a plea? And just like we can take judicial notice of what reasonable prosecutors can do. I mean, I think that goes the other way. I mean, surely prosecutors don't think he's going to plead guilty to a mandatory life sentence, right? Like when you say, hey, maybe we should talk about a plea. And then the defendant, the first question the defense can ask, like, what might I get out of this? And in this hypothetical where the prosecutor says, you get the same mandatory life sentence you get if you go to trial and lose, the defense would say, maybe we don't understand how negotiations work. I get the thing that you want even if you win is not the constructive start to a negotiation. That's actually how most plea negotiations go, right? I mean, like that's actually how, like, often plea negotiations do go. You plead guilty to the life sentence and you may work down from it based on cooperation. Like that's how most mandatory life sentence plea negotiations look, right? I might agree with that, Your Honor. I think that, you know, the government made no promises or assurances that if Mr. Flood would have proffered, if he then would have cooperated, that would have inevitably led to a plea agreement here. Not inevitably. Whether the facts in the record right now conclusively show there's not a reasonable probability. That's the legal question, isn't it? That is, that is the legal question, Your Honor. And I would also, you know, observe that even if he can show a reasonable probability on the, you know, the facts in the record or even facts that are evidential. What evidence is there that the outcome would have been any different? Much less a reasonable probability that the outcome would have been different if counsel had pursued a plea bargain. And the problem is that there are two reasons to think that there would, that there's no reasonable probability that the outcome would have been different. And so you falter on the grounds of no prejudice. And one of the reasons is the seriousness of the offense. But the other reason is, is it would be a very poor witness because there were two different instances where he had lied. Number one, in the grand jury testimony. And number two, during the investigation. And so the prosecution here had someone who was simply not a very worthwhile witness. And they have also a very serious offense. And so how is the outcome going to be different in any meaningful sense if counsel had pursued a plea bargain? He was simply running up against obstacles, both in the serious nature of the offense and also because he was a lousy witness and he didn't have much to offer. And so has the reasonable probability standard met, given the problems that they don't have much to offer in terms of cooperation or whatever you can, that's, that's, that's the problem. Yes, Your Honor, I would agree with all of that. I do not believe that the facts alleged in the petition, you know, have satisfied the reasonable probability standard that is applied in Lafler-Frye cases of ineffective related, It's not just a possibility that it's going to be, there's going to be some sort of difference. It has to be a reasonable probability. And did the district court abuse its discretion in finding that there was no reasonable probability here, given the difficulties that I just alluded to? No, our position is that the district court did not abuse its discretion. Can I now ask you that? Because Mayhew tells me how I apply the reason, the abuse of discretion standard. I agree it's abuse of discretion. Mayhew says it's abuse of discretion, but then Mayhew announces a substantive legal standard for when you have to have a hearing. And we agree that district courts don't have discretion to violate the substantive legal standard, right? Correct. So it's not like, it's not like the judges get to look at all the facts and decide, you know what, I think this guy's almost certainly going to lose. And it seems like a hearing is kind of a waste of time. So as part of my discretion in case management, so for example, I know that in the District of Maryland, for instance, we like never have hearings in civil cases. They always like no hearing is necessary, see local rule blank. That's not the standard for granting a hearing in a 2250. Like a district court judge doesn't get to just not have a hearing in a 2255 because they don't think it's going to be a good use of time because the prisoner's ultimately almost certainly going to lose, right? Correct. Okay. So we don't defer to the district judge on whether he thinks it's a good idea or a use, a good use of time to have a hearing in a 2255 case. I agree with that, Your Honor. Okay. Yes. Can I ask just a follow-up question to that? This is just like a confusion on my part. I don't know. So there was a hearing in this case, right? On the 2255? Yes, there was. Right. They held a hearing. What they didn't do is hold an evidentiary hearing. Where do we get the requirement of an evidentiary hearing? Like I get the requirement of a hearing. 2255B says that you're entitled to a prompt hearing thereon, right? But why? I mean, I understand like why it makes sense to have an evidentiary hearing, but is that actually like the requirement as opposed to having a hearing itself? I mean, it seems like in some sense, if we're really just looking at 2255B as an example, they had a hearing. Is there a reason that I should think it's required to be an evidentiary hearing? I think, you know, that the standard is- How about page 176 of Mayhew, where it says the words, an evidentiary hearing is required unless that standard is satisfied. Mayhew literally says it, doesn't it? Yes, that's right, Your Honor. And I do think that there is, in all candor, a difference between the hearing that was held in this case and an evidentiary hearing. You know, unless the record conclusively shows this is standard, a hearing must be held. However, you know, the district court, I think, rightly concluded that the facts alleged in the petition were, you know, were not of the kind that- The district court rightly concluded applying a legal standard that seems to be 180 degrees from the actual legal standard? You know, regardless of the, you know, I think the district court reached the right result, and I think this court can still affirm on any basis in the record, and so we would ask the court to affirm. Just as a matter of practice, aren't there? I mean, I feel like I've seen a lot of these cases where there was a 2255 motion based on ineffective assistance of counsel, and they've been resolved as a matter of practice without an evidentiary hearing where the district court did not feel that the evidence or the arguments warranted, the evidence warranted an evidentiary hearing. In other words, I'm wondering whether that, and I appreciate the language that my colleague, Judge Heitens, has brought forward, but as a matter of practice, I've been in situations, many situations where a district court would say an evidentiary hearing would be just useless because the evidence for ineffective assistance of counsel is so weak that it just doesn't even begin to hold up. Let's take the classic example of where you have an ineffective assistance of counsel claim that's brought forward, and the thing that is alleged in terms of ineffective assistance of counsel is an omission on the part of counsel, and yet the evidence is tendered that it was not, there was no omission at all. Counsel did the very thing that counsel was not accused, that was accused of not doing. Now, you wouldn't have to, would you have to hold an evidentiary hearing in a situation where you, the record conclusively proves without an evidentiary hearing that the very thing counsel was accused of not doing, the lawyer actually did. So the point I'm making is I don't think as a matter of practice that every single claim under 2255 requires an evidentiary hearing categorically no matter how weak and feeble the claim is. I mean, this would be quite a shift in practice. I think when it's in doubt, obviously you should, if there's an arguable point to be made, yes, you should have an evidentiary hearing, but many of these cases are just absolutely frivolous, and I'm thinking as a matter of practice this would come as quite revelatory to district court judges to say that they've got to have an evidentiary hearing in every ineffective assistance of counsel 2255 motion that comes along, because some of these are just frivolous from the outset, and so it can't be that this is an invariable requirement. If it is, we have affected essentially a sea change in practice. Yes, I agree with all of that, Judge Wilkinson, and I will also say that, you know, the Mayhew case that Judge Heitens and I have been discussing, you know, the underlying thread there is that a movement must present a colorable Sixth Amendment claim. Yeah, basically the summary judgment standard, right? Right, so if the claim is not colorable, then of course an evidentiary hearing is not required, and it's the government's position here that this claim is not colorable, that even if Mr. Flood got the opportunity to say everything that he wanted to say at an suggesting an evidentiary hearing was required on, but even if he were permitted to come into court and talk about whether he would have proffered, whether he would have cooperated, whether he would have done X, Y, and Z, you know, he is still miles away from showing a reasonable probability of prejudice under the relevant Lafleur-Frey standard for plea-related ineffectiveness claims. I mean, he's even still miles away from showing a reasonable probability that the prosecution would have offered him a plea deal, which, by the way, is the premise that both Lafleur and Frey took for granted, that there is a plea offer already on the table that for some reason was not accepted by the petitioner in those cases. So, you know, I think it's notable, or I think I will, if helpful, recite that standard here. He must show a substantial, not just conceivable, likelihood that the prosecution would have offered a plea deal, that's number one, that he would have accepted the offer's terms. Of course, we don't know what those terms are in this case, because no plea deal was on the table, and, you know, there are questions of remedy there. Can you ask the prosecutor to renew a plea offer that was never made in the first place? So you make a big stink about that in your brief, and that, admittedly, strikes me as a tricky question, and my tentative thought would be no, you can't, because your whole, all the points you make, like you can't force the executive branch to offer someone a plea agreement. I mean, and so when we've, in cases where there was a plea agreement on the table, we say, well, that's just enforcing the, like, that's just enforcing the contract they already made. You can't make them make a contract. But then let's, I realize this is like 10 steps down the road, but why wouldn't the remedy in that situation, so if the violation was, I know, let's assume a gazillion assumptions, we don't, you're not going to agree with, but if there was a constitutional violation, why isn't the remedy, the fairly common remedy in post-conviction litigation, and say, well, the remedy is we vacate the wrongful conviction to restore the parties to the position they would have been but for the violation, and if the government wants to say, cool, no plea, we're going to trial again, we go to trial again, and if the government wants to say, actually, like, I just don't think that that remedy point is quite the silver bullet your brief presents it as, because it strikes me that there would be a remedy. It's the remedy that we do in 2255, put people in the position they should have been in, and then they can go forward through the process again, and the process turns out however the process turns out. Why wouldn't that obviously be the remedy? I think that could be the remedy, Your Honor, and I don't, you know, I don't want to harp on it too much. I did put that in a footnote, and I don't, I didn't intend for it to be any kind of silver bullet. No, it wasn't just in a footnote, though. There was the whole discussion of, like, how could it possibly be IAC if the government didn't actually offer you a plea deal, and it strikes me that the answer is pretty obvious. It could be because, right, that, it's not just the footnote, but I take your point. But, you know, my, I guess my larger point is that if the Strickland claim isn't colorable in the first instance, then no evidentiary hearing is required, and that does require us to take a peek at the merits of his claim, which is the failure to unilaterally resolve this case by by plea resolution. And so, you know, we have a need for him to prove, Mr. Flood, to prove that the prosecution would have offered the plea deal, that he would have accepted the terms, that the prosecution would not have withdrawn or canceled, that the court would have accepted it, and that he would have received a more favorable sentence. And we are taking speculative leaps on each of these showings that must be made, and I see that my time is about to expire. I am happy to continue to address, you know, the court's questions, but I will just, you know, re-emphasize and point the court maybe to Merzbacher versus Sheeran, in which this court found no ineffectiveness, no prejudice, because the plea offer was in such an incipient stage, such a nascent plea offer, that it would be too speculative to find prejudice there. And, of course, we don't even have a nascent plea offer here. We have no plea offer. And I see my time is up, and I am happy to answer any additional questions. All right, thank you very much. Let's hear from Mr. Brown and Rubato. Thank you, Your Honor. I'd like to point out a few facts that I think are relevant to the discussion that was just had. First of all, in the government's brief, presumably authored by Ms. Wilkinson, there was a roadmap laid out of what a plea would have looked like. And that's a JA 109. And it's not perfect, I'll give you that, but there are some things there. She says it could have been a possible recommendation from the government of two levels for substantial assistance. And she also says something interesting there that appears to be he could have pled to murder, which, of course, is different from kidnapping resulting in death. And certainly, that would be an interesting thing to explore at an evidentiary hearing, exactly what she meant by that. She also said that the government would insist on a two-point enhancement for obstruction of justice. So, again, while that's not perfect, it does lay out a little bit of a roadmap, which could be fleshed out at an evidentiary hearing to try to determine what, if any, plea the government would have offered. So, when is an evidentiary hearing required, in your view, and when is it not? Or do you think there's a 100 percent requirement that a district judge hold an evidentiary hearing? Or do you think an evidentiary hearing is only necessary if there's a genuine dispute? Or what is your view as to when an evidentiary hearing would be required? Is it an inflexible requirement? I think it's, again, it's flexible. The petitioner needs to make a colorable claim, which . . . Yeah, okay. So, maybe let's, we might be on the same, we might be on the same wavelength here. And that is, was it an abuse of discretion for the district court to say that there was no colorable claim here in light of the two factors that we all know are there? And one being the seriousness of the offense, and the other being the fact that he is a proven prevaricator. And that would seem to argue for the fact that there was no abuse of discretion in reaching the conclusion that the plea negotiations would have been fruitless. Your Honor . . . And you've got the affidavit to back that up. The problem with this case is that the record as it currently exists is extraordinarily messy. There are contradictions to the left and contradictions to the right. What the district court did was took the prosecutor's word, which contradicted itself, and took that as the gospel truth, and disregarded everything that came from the other side. I mean, that's the core of the problem. Mr. Lawler's statement, right, his affidavit, which unambiguously stated that the government tried to initiate plea discussions, that was completely discounted. Without any hearing . . . I just want to make sure I understand the argument. You made a reference that that discussion, whatever it was, about proffer or cooperation, you suggested that that was not told to the defendant, to Mr. Flood? Is that . . . That's what the record indicates. First, where would I find that in the record? And then second, that's not a . . . like, you haven't brought that claim. I mean, I don't think it would work under Laffler, but that's not . . . you haven't brought sort of a failure to communicate that whatever . . . not discussion. That would be a Frye claim, and we're not bringing a Frye claim here. Ours is more general, that it was just ineffective assistance of counsel in the plea bargaining phase. And the fact that that was not communicated to Flood comes from the Lawler affidavit. Lawler says in his affidavit that he did not communicate that to Flood. Okay, thank you. So, and to get back to Judge Wilkinson's question, I absolutely am not suggesting that there needs to be an evidentiary hearing in every case. But in this case, where there are material facts that are hotly contested, where the record is unclear, this is an exception. This is an extraordinarily unusual case. I assume that's why the COA was granted here. But in this type of case, yes, an evidentiary hearing is needed. I have no doubt that they're contested and they may be in dispute. The question is, were they so genuinely in dispute that it would give rise to a reasonable probability of difference had there been plea negotiations? And, you know, I just am hard-pressed to see what kind of cooperation or whatever the defense would have been able to offer that would have resulted in some sort of a more favorable deal. But that's, I think. And again, there must have been something, because otherwise the government would not have reached out to defense counsel. And I would point out the fact that here we are, right now, arguing over the facts, over whether there was a plea. The fact that the government reached out, that's only the first step. I mean, there's a long road from saying, well, what about the possibility of a plea? And then actually getting down, you know, the devil is always in the details on these kinds of things. And when the rubber hits the road on this situation, then it's pretty easy to imagine prosecutorial resistance. And you're right, Your Honor. Things can go wrong along that path. But what we're looking for here is, was there a reasonable probability that a plea offer would have been extended? And then, is there a reasonable probability that it would have been accepted? And the assessment of reasonable probability, as I understand it, is subject to the abuse of discretion standard. I'm not sure I would agree with that. And again, that's not before the court here. But further down the road, I think that would be a mixed question of fact and law. And I think standard would be a little bit different. But where we are here are we've got this muddle of facts that need to be resolved. It's an unusual case. The facts here are unique. This isn't Lafler. This isn't Frye. This isn't Pender. It's its own unique case. And the solution for that is an evidentiary here. It's an interesting thing, because I always have able counsel, and you certainly are able. This is an unusual case. This just has unusual characteristics. And then a month later, or two months later, I'm facing arguments that this case laid down a broad and significant rule, which I am obliged to follow. And so every soothing assurance that is given to me about something being idiosyncratic and unusual, I find two or three months later that, hey, it wasn't unusual at all. So I have to be a little bit careful about being taken in by that. You see? I understand where you're coming from, Your Honor, very much. Well, you'll see you're court-appointed. You've done a fine job. I really appreciate your argument and express the appreciation of the court for your taking this case on. And Judge Richardson, do you have anything for Judge Hyten? I do not. We have nothing further. Thank you, Your Honor. Thank you. Come down and say hi to you, and then go right into our last case.
judges: J. Harvie Wilkinson III, Julius N. Richardson, Toby J. Heytens